In re Robert C. REDDEN, Debtor.

Edward R. Collum, Plaintiff,

v.

Robert C. Redden, Defendant.

Bankruptcy No. 95–1485.
Adversary No. 96–27.

United States Bankruptcy Court,
D. Delaware.

Jan. 19, 2000.

---

See also 234 B.R. 49.

Eugene M. Lawson, Jr., Fletcher, Heald & Hildreth, P.L.C., Arlington, VA, Henry A. Heiman, Heiman, Aber, Goldlust & Baker, Wilmington, DE, for debtor.

Stephen P. Ellis, Sergovic & Ellis, P.A., for Edward R. Collum.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The matter before the court is Edward R. Collum's Amended Complaint to Determine Nondischargeability of Debt. Collum asserts nondischargeability on his claim of $158,950 on the basis of 11 U.S.C. § 523(a)(2)(A) which provides that a discharge

> does not discharge an individual debtor from any debt . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition

Trial was held on August 23, 1999. Facts stipulated by the parties and found by the court are as follows:

On May 6, 1992, Collum as seller and E.C.I. Properties, Inc. and/or Assigns, as buyer, executed a sales contract of property located at 10 E. Chapman, Alexandria, Virginia.[2] An addendum to the sales contract included a seller "take back" loan provision for $70,000, signed by Debtor in his capacity as E.C.I.'s president. It also provided that the take back loan would be collateralized with a second deed of trust on property located at 450 S. Burlington Road in Hyattsville, Maryland. The addendum further provided that if 10 E. Chapman Street were to be sold (with the parties' mutual consent) the "loan is to be moved to enough property that is owned by ECI [sic] Properties with personal liability & signatures of owners of corporation". A promissory note for $67,000, dated July 16, 1992, was signed by Debtor in his individual capacity. Because Collum was concerned that Debtor had insufficient equity in the Burlington Road property, a deed of trust in favor of Collum was placed instead on 5611 Quincy Street, Hyattsville, Maryland, on July 16, 1992.[3] This deed of trust provided that, with Collum's consent, Debtor could "substitute collateral of equal or greater value for the property secured herein".

Debtor eventually wanted to sell the Quincy Street property and requested in December of 1993 that Collum release his deed of trust on it to facilitate the sale. Debtor wanted Collum to take a substitute deed of trust on property located at 514 Fontaine Street[4] and release his deed of trust on Quincy Street. Collum refused, concerned because he would be in third position on the Fontaine Street property and therefore inadequately secured. The sale was lost, although Debtor had a deed of trust drawn up with respect to Fontaine Street, signed it himself and had it notarized, but not recorded at that time. In

---

**1.** The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

**2.** This contract is not part of the record.

**3.** The only deed of trust dated July 16, 1992, in the record identifies Lot 60, Block D, in the

Villa Heights subdivision. It appears that this is the Quincy Street property.

**4.** The Fontaine Street property is sometimes referred to in pleadings as having a street number of 614 but the deed of trust dated December 21, 1993, identifies it as number 514.

January of 1994, Debtor stopped making payments on 514 Fontaine Street.[5] Debtor continued to seek this substitution. Collum eventually agreed to take a second deed of trust[6] on the Fontaine Street property when it was agreed that $67,000 of the proceeds of the sale of Quincy Street would be placed in escrow for Collum's benefit. The Quincy Street property was sold on April 29, 1994. Thereafter, the second deed of trust on the Fontaine Street property was paid off. Because, *inter alia*, he would then be the second lienholder instead of the third, on June 11, 1994, Collum executed a release of the deed of trust on the Quincy Street property and a release of the $67,000 escrow.[7]

At trial, Collum testified that on June 11, 1994, Debtor proposed that the Fontaine Street property be substituted for the Quincy Street Property, the existing second deed of trust having been paid off with the proceeds of sale of Quincy Street. Collum was aware that the first mortgage on that property was in the amount of over $300,000, asked Debtor about it, and was assured that the mortgage was current. He also testified that the tax assessed value of the property was $400,000. Witness John Seeley testified that he was present on June 11, 1994, when Debtor asserted that "everything" was "up to date" on the Fontaine Street property. However, the fact of the matter was that Debtor had ceased paying the first mortgage in January of that year and, on April 22, 1994, had conveyed the property to Thomas Duling.[8] The deed to Duling was recorded on May 26, 1994. Debtor did not relate any of this information to Collum.[9] The Fontaine Street property was foreclosed upon by the first mortgage holder[10] in October of 1994. Collum obtained a judgment against Debtor for $158,950,[11] and Debtor then filed this chapter 7.

5. The Fontaine Street property was foreclosed upon on November 27, 1994.

6. Another deed of trust that had been in second position was satisfied, apparently by means of the sale of the Quincy Street property.

7. Also on June 11, 1994, Collum executed an allonge (modification of the promissory note) when he agreed to move his lien to the Fontaine Street property. Debtor asserts that the allonge served only to benefit Collum in that it advanced the payment due date from the sixteenth to the first of each month, reduced the grace period for late payments from fifteen to five days, and accelerated principal payments and, therefore, Collum does not have a § 523(a)(2)(A) claim on the basis of the allonge. The allonge also provided that Debtor would make curtailment payments on the principal in the amount of $10,000 on the second anniversary of the note "and the same amount biannually thereafter." Previously, the parties had agreed in the addendum of May 6, 1992, to the sales contract that Collum "*may request* a curtail of $10,000 on the second anniversary" and biannually thereafter. (Emphasis added.) By the allonge, Debtor was *required* to make payments. Before Collum agreed to release the escrow he received a payment of $10,149 from the $67,000 in escrow. The balance was paid to Debtor's father. This $10,149 was allocated as follows: approximately $5,000 as consideration for the curtailment, $5,000 to reduction of principal, and the balance toward interest. By virtue of the payment the note was brought current and the principal amount due to Collum was reduced from $67,000 to $62,000. The complaint, however, relies on the release of the $67,000 escrow as the basis for the nondischargeability of this debt. The allonge is not crucial to our analysis. Even if it were, it is part of a broader transaction in which Collum released his claim to the escrow and released the deed of trust in the Quincy Street property. The allonge is more *evidence that the original debt was restructured*, thus representing an extension, renewal or refinancing of credit.

8. Duling was the trustee of a land trust into which Debtor placed the Fontaine Street property. Debtor asserts that he did so as part of his estate planning.

9. Debtor also testified that by or in June of 1994 he had received at least one foreclosure notice. He didn't tell Collum this either.

10. Although the property was "in trust", the interest of Debtor, as the beneficiary, was, by the terms of the land trust agreement, an interest in personal property, not the real estate itself.

11. According to the complaint, the judgment consisted of $62,000 plus interest of 11 per-

Collum's position is that Debtor intentionally misrepresented his ownership of the Fontaine Street property and the status of the mortgage on it in order to induce Collum to release the $67,000 from escrow. Debtor's position is that the facts stated in Collum's complaint do not involve obtaining money or an extension of credit and, because there was no fraud with respect to the initial promissory note, Collum has failed to state a claim upon which relief can be granted. He also argues that Collum has not stated a claim because Collum knew of Debtor's financial problems [12] and failed to investigate the status of the Fontaine Street property.

■ To prove nondischargeability under § 523(a)(2)(A), Collum must establish that Debtor engaged in false pretenses, false representation or actual fraud on which Collum justifiably relied and by which he was damaged. It is clear from the credible testimony that Collum was damaged by this transaction: the Fontaine Street property was foreclosed upon and Collum lost the security for his debt when he released the $67,000 escrow and allowed the Fontaine Street property to be substituted for it in reliance on Debtor's representations. It is also clear that Debtor falsely represented that he owned the Fontaine Street property and that the mortgage on it was current. He had already conveyed it to Duling when he purported to grant a second deed of trust to Collum with respect to it, and the deed to Duling was recorded before Collum agreed to the allonge or released the escrow.

Debtor testified that on April 22, 1994, he put the Fontaine Street property into a land trust agreement because he was making a will and his attorney suggested that he put properties in trust. He asserts that he retained full legal and beneficial ownership of the property despite the transfer. The documents are to the contrary. The land trust agreement provided that Debtor's interest was a personal one in the earnings and proceeds of the property. It expressly stated that Debtor "shall not have any legal or equitable right, title or interest, as realty, in or to the real estate." [13] Defendant's Exhibit 6. Furthermore, Debtor had already defaulted on the mortgage on the property six months before he induced Collum to accept it as substitute collateral and four months before he conveyed it to the land trust with Duling as trustee.[14] He also testified that he did not know on June 11, 1994, that he had deeded Fontaine Street to Duling in April of that year or that the deed had been recorded in May of 1994. He knew he had done the paperwork but did not know when it was filed. He stated that he did not know who told his attorney to file the deed of trust to Duling. Debtor knew, however, that he had executed the transfer papers on the Fontaine Street property before he met with Collum to execute the allonge and releases. He did not disclose the transfer at that time. He did not disclose that the mortgage was in arrears. His argument at trial that he retained the

---

cent from October 1, 1994, and $21,950 in attorney's fees with respect to Count I of Collum's state court complaint, plus $65,000 in actual and compensatory damages and $10,000 in punitive damages with interest at nine percent from May 25, 1995, with respect to Count II of his state court complaint.

12. In his opening statement at trial, Debtor's counsel argued that Collum knew of Debtor's financial problems because Debtor was in arrears to Collum.

13. The land trust agreement stated that the Debtor as beneficiary had the right to direct the trustee in his dealings with the property in certain respects as detailed in the land trust agreement and the right to "manage and control" the property. However, Debtor's *interest* in the property was limited to that of *personalty*.

14. Debtor asserts that he would have instructed Duling, as trustee of the land trust, to execute another deed of trust if Collum had told him to do so. This is both irrelevant and small comfort to Collum. Debtor materially misrepresented the facts about this property to induce Collum to release the escrow. Collum justifiably relied upon those misrepresentations and was injured as a result.

legal and beneficial ownership of the property was false inasmuch as the land trust agreement provided that his only interest was in the proceeds, which is an interest in personalty. We find his testimony unbelievable and do not credit it. We find that Debtor knew he had transferred the property to Duling and knew the mortgage was in arrears when he offered it to Collum in June of 1994 as substitute collateral. We also find that he falsely represented the status of the property and his interest in it in order to induce Collum to release the escrow.

■ Debtor asserts that the Certificate of Partial Satisfaction,[15] also dated June 11, 1994, which released the deed of trust on the Quincy Street property was not, *inter alia*, creation of a debt for "money, property, services, or an extension, renewal, or refinancing of credit". This argument is without merit as the Certificate of Partial Satisfaction was part of the transaction about which Collum complains. Section 523(a)(2)(A) contemplates misrepresentations with respect to the refinancing of credit. The substitution of collateral and changes in the terms of a financial obligation constitute a refinance. The debt was secured by the Quincy Street property and $67,000 was placed in escrow for Collum's benefit when 5611 Quincy Street was sold. The release of Collum's deed of trust on Quincy Street and the escrow was premised on substitution of Fontaine Street as collateral, a substitution of property which Debtor had no right to convey because he had previously deeded the property to Duling. This entire transaction constituted a refinancing of the debt within the meaning of the statute.

■ The only issue remaining for us to decide is whether Collum justifiably relied on Debtor's representations. In *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the debtor obtained from the Fields a waiver of rights under a due-on-sale clause without disclosing that he had already-conveyed the property in question. The bankruptcy court held that the debtor had made false representations upon which the Fields had relied, to their detriment, in extending credit. The bankruptcy court held, however, that a reasonable person would have checked whether the property had been conveyed before agreeing to waive their rights and so the debt was dischargeable. The Supreme Court reversed, holding that under § 523(a)(2)(A) only justifiable, not reasonable, reliance, was required. The Court described justifiable reliance as "a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than the application of a community standard of conduct to all cases." 516 U.S. at 71, 116 S.Ct. at 444. In addition, reliance can be justified even though the plaintiff could have ascertained the falsity of the representations if the plaintiff had investigated.

■ In the matter before us, Collum's reliance on Debtor's representations about the Fontaine Street property was justified. He knew that the sale of the Quincy Street property paid off the second lien on the Fontaine Street property and that he would therefore be the second instead of third lienholder. He knew the amount of the first mortgage and that Debtor owned the property. When Debtor offered the property to Collum as substitute collateral in June of 1994, Collum had no reason to suspect it had been transferred after December 1993 when Debtor first offered it to him or that the mortgage was in default. Debtor in fact assured him that the mortgage was current and the testimony of witness John Seeley is reasonably construed as confirming this. Thus, there were none of the "red flags" which *Field v. Mans* referred to as indications that Collum should have investigated further. Al-

---

**15.** The Certificate of Partial Satisfaction also noted that the unpaid portion of the note was being secured by property at *614* Fontaine Street. The pleadings in this adversary refer to 514 Fontaine Street.

though Debtor was not always current in his payments to Collum, pursuant to the allonge Collum received a curtailment payment which brought the debt current. This plus the substitution of the Fontaine Street property as collateral would have adequately secured Collum's interest if the facts had been as Debtor represented them. Although it may have been advisable for Collum to further investigate, he was not required to do so under the circumstances and his reliance on Debtor's representations was justified.